FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE N.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | NO. 2:25-CV-0417-TOR<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Summary Judgment for judicial review of Defendant's denial of his application for Title II under the Social Security Act (ECF No. 16). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's denial of his application for Title II under the Social Security Act is AFFIRMED.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(C)(3).

## STANDARD OF REVIEW

It is the administrative law judge's ("ALJ") job to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)). The Court will affirm the Commissioner's decision to deny benefits unless it "is not supported by substantial evidence or is based on legal error." *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098 (internal quotations omitted). On that note, it is important for the ALJ to provide sufficient reasons for the court to review the basis of an administrative order and to identify where in the record those reasons are reflected. *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098).

The Court reviews the agency's findings to determine whether they are supported with substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019); 42 U.S.C. § 405(g). In this context, the threshold is not high. *Biestek*, 587 U.S. at 103. Substantial evidence is present when there is "more than a mere scintilla." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, "such relevant evidence as a reasonable

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. of New York*, 305 U.S. at 229).

The Court will not reverse for errors that are harmless. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)). To effectuate this, the Court reviews the record as a whole to determine whether the error altered the result of the case. *Molina*, 674 F.3d at 1115.

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

The Commissioner uses a five-step sequential process to decide whether a claimant is considered disabled. 20 C.F.R. § 404.1520(a)(1). The Commissioner considers all evidence in the record to make this determination. 20 C.F.R. § 404.1520(a)(3). Disability is defined "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). This requires a severe impairment that makes the claimant unable to complete the claimant's past relevant work or any other substantial gainful work. 20 C.F.R. § 404.1505(a).

At each step, the Commissioner may find a claimant either not disabled or

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

disabled.  20 C.F.R. § 404.1520(a)(4).  If the claimant is found disabled then the process stops and the determination is made.  20 C.F.R. § 404.1520(a)(4).  However, step three to four, the Commissioner assesses residual function capacity ("RFC").  *Id.*  Then steps four and five the Commissioner evaluates the claimant's claim.  *Id.*

At step one, the Commissioner considers the claimant's work activity and if the Commissioner decides that the claimant is doing substantial gainful activity, then the Commissioner will find the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity is both substantial and gainful work activity.  20 C.F.R. § 404.1572.  Substantial work activity means "doing significant physical or mental activities" and may be done on a part-time basis, with less pay, or less responsibility than before.  20 C.F.R. § 404.1572(a).  Gainful work activity is work done for pay or profit even if the profit is not realized.  20 C.F.R. § 404.1572(b).  Put together, "Substantial gainful activity means work that—(a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

At step two, the Commissioner considers the claimant's medical severity of the claimant's impairment(s).  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have either a physical or mental impairment that is severely medically determinable, or a combination of impairments satisfying the requirements the

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

Commissioner will deem the claimant as not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the Commissioner continues to consider the claimant's medical severity of claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant falls under one of the listings in appendix 1 and fulfills this subpart and the durational requirement, then the Commissioner will determine the claimant as disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

At step four, the Commissioner shifts to address the claimant's RFC and work experience to see whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Commissioner decides that the claimant can still complete past relevant work, then the Commissioner rules the claimant as not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

At step five, the Commissioner continues to review the claimant's residual functional capacity with the claimant's age, education and work experience to settle on any possible adjustments to other work. 20 C.F.R. § 404.1520(a)(4)(v). If this is possible, then the Commissioner will rule that the claimant is not disabled. However, if the Commissioner establishes the opposite, then the claimant is deemed as disabled. 20 C.F.R. § 404.1520(a)(4)(v).

Once a claimant proves that: "(1) that she is not presently engaged in a substantial gainful activity; (2) that her disability is severe, and (3) that her

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

impairment meets or equals one of the specific impairments described in the regulations", then the claimant must be found disabled. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (quoting *Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir. 2002)). However, if the stated impairment does not meet the requirement listed in the regulations, the claimant may "still establish a prima facie case of disability by proving at step four that 'in addition to the first two requirements, ... she is not able to perform any work that she has done in the past.'" *Hoopai*, 499 F.3d at 1074 (quoting *Barnhart,* 278 F.3d at 955). After the claimant establishes their prima facie case at step five, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Hoopai*, 499 F.3d at 1074–75 (quoting *Barnhart,* 278 F.3d at 955).

## ALJ FINDINGS

The claimant alleges the onset of his disability was July 16, 2019. ECF No 16 at 3; Tr. 42. On September 22, 2022, Plaintiff filed a Title II application for disability insurance under the Social Security Act ("SSA").[1] Tr. 42. The application was initially denied on April 27, 2023, and denied on reconsideration on April 1, 2024. Tr. 42. The ALJ recognized that Plaintiff's last insured status

---

[1] Plaintiff seeks judicial review of the denial of his applications under Title XVI and Title II; however, the arguments and administrative record demonstrate only an application under Title II. Therefore, the Court will not address any Title XVI application.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

was met on June 30, 2022.  Tr. 44.

At step one, the ALJ determined that Plaintiff did not engage in any substantial gainful activity from his alleged onset date of July 16, 2019, to the last date of his insured status, June 30, 2022.  Tr. 44.

At step two, from the date of his last insured status, Plaintiff had severe impairments including: spine disorders, fibromyalgia, diverticulosis, obesity, gastrointestinal abnormality, depressive disorder, anxiety disorder, and trauma disorder.  Tr. 44.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 45.

Additionally, the ALJ determined that Plaintiff's mental impairments, considered individually or in combination, did not meet the criteria of listing under 12.04, 12.06 and 12.15.  Tr. 45.  The ALJ considered paragraph B criteria but did not find either one extreme limitation or two marked limitations.  Tr. 46-45.  The ALJ did not find any indication or presence of paragraph C criteria either.  Tr. 47.

The ALJ established Plaintiff's RFC consisted of the ability to perform light work with the following limitations:

> occasional climbing, balancing, stooping, kneeling, crouching, and crawling; able to understand, remember and carry out simple, repetitive work; working in approximately two-hour intervals with standard work breaks provided; occasional, superficial interaction with the public, co-workers and supervisors; able to accept instructions from supervisors; normal, routine workplace changes; and with work goals set by others.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

Tr. 47.

At step 5, the ALJ found that Plaintiff did not have any relevant past work, is 35 years old, and has a marginal education.  Tr. 55.  Considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform.  Tr. 56.  Some of these jobs include a housekeeping cleaner, small products II assembler and production assembler.  *Id.*

## ISSUES

Plaintiff assigns three issues to the ALJ's decision on Plaintiff's denial of Title II Social Security Disability Insurance Benefits ("DIB").  ECF No. 16 at 2.

I.   Whether the ALJ improperly evaluated the medical evidence when creating the residual functional capacity.

II.  Whether the ALJ failed to meet the Commissioner's burden at step five.

ECF No. 16 at 2.

## DISCUSSION

**I.   The ALJ properly evaluated the medical evidence when determining Plaintiff's residual functional capacity.**

"'The credibility determination is exclusively the ALJ's to make,' and '[w]e are constrained to review the reasons the ALJ asserts.'"  *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (citation modified).  When the ALJ determines the credibility of a

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

claimant's subjective testimony, the ALJ uses a two-step process. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The first step requires the ALJ to "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant only needs to "show that it could reasonably have caused some degree of the symptom." *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter,* 504 F.3d at 1035–36).

The second step states when the ALJ

> determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [he] alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.

*Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015)) (citations omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

Pursuant to this, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

undermines that testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)) (citations omitted). Determining the credibility of a claimant's testimony about the severity of symptoms allows considerations including things such as:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

However, if the ALJ finds malingering based on affirmative evidence, the ALJ is not required to meet the high standard of providing clear and convincing reasons. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must provide evidence of malingering "such as a reputation for dishonesty, conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citations omitted).

Next, under 20 C.F.R. § 404.1520c, the ALJ's guidelines for how to consider and articulate medical opinions and prior administrative medical findings are laid out. With these regulations, the ALJ is not required to provide "'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citations omitted).

The new regulations focus on supportability and consistency when evaluating the persuasiveness of an opinion. *Woods*, 32 F.4th at 791. Supportability "means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). On the other hand, "consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

**A. RFC Determination**

First, Plaintiff contends that the ALJ erred by failing to address his moderate mental impairments in the RFC determination, specifically his somatic symptom disorder. ECF No. 16 at 8-9. For example, Plaintiff refers to J. Regnier, Psy.D.'s opinion. ECF No. 16 at 9.

On January 1, 2023, Dr. Regnier found that Plaintiff had a "long history of centralized pain, significant depressed mood, and low level of functioning related

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

to pain." Tr. 506. Dr. Regnier further observed that "[h]e was distractible, flat of affect, but responsive throughout the interaction." Tr. 504. Dr. Regnier noted Plaintiff's cooperative attitude, poor eye contact, restlessness, depressed mood, flat affect, normal speech and rhythm and distractibility. Tr. 505. However, Dr. Regnier noted that he was "not gravely disabled." Tr. 505. As part of Plaintiff's treatment plan, Dr. Regnier advised cognitive processing therapy for four appointments, then to reassess. Tr. 506.

The ALJ stated that "J. Regnier, PsyD, observed that although the claimant presented as reserved with poor eye contact and a depressed mood, he was cooperative throughout the behavioral health appointment." Tr. 46. Continuing, the ALJ stated that Dr. Regnier stated that Plaintiff was not disabled and suggested that Plaintiff should "re-engage with cognitive processing therapy for 4 appointments followed by re-evaluation." Tr. 46.

Plaintiff contends that the ALJ did not address Plaintiff's mental impairments in the RFC. ECF No. 16 at 8-9. Defendant responds that Plaintiff's limitations including "able to understand, remember and carry out simple, repetitive work" and "occasionally superficial interaction with the public, co-workers and supervisors" are examples of these mental impairments demonstrated in the RFC. ECF No. 18 at 3; Tr. 47.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

Plaintiff does not identify specific limitations that were not addressed in the RFC.  ECF No. 16 at 8-9.  Plaintiff uses the ALJ's use of Dr. Regner's opinion but does not demonstrate how this exhibited a specific or stronger impairment.  Rather, Plaintiff argues that the ALJ erred in its reasoning.  On that note, the ALJ properly addressed these limitations in the RFC.  This is a reasonable interpretation and supported by the evidence.

Regarding Plaintiff's argument about the ALJ's reasoning, Plaintiff argues that cooperation is not evidence of the absence of limitations and that failure to cooperate does not show obstruction to the evaluation or is evidence of malingering.  ECF No. 16 at 9.  However, the ALJ did not appear to use Dr. Regnier's opinion to provide evidence of malingering.  Rather, his opinion was used to determine limitations regarding Plaintiff's ability to interact with others.  Tr. 46.  Therefore, Plaintiff does not identify an error.  Even if this did amount to an error, it is unlikely it would have changed the outcome of the ALJ's determination.

Plaintiff reaffirms this argument that cooperation does not prove the absence of limitations multiple times.  ECF No. 16 at 11.  Nevertheless, the ALJ provided numerous citations of other supportive evidence for his determination.  Tr. 42-57.  Also, Plaintiff does not cite authorities or provide further specifics for this argument.  For those reasons, Plaintiff did not identify an error.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

Additionally, the ALJ's analysis regarding Dr. Regnier's opinion is a reasonable conclusion and supported by Dr. Regnier's report. The ALJ even noted Plaintiff's depressed mood, reservation and poor eye contact. Tr. 46. Nevertheless, "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022).

**B. Malingering**

Second, Plaintiff argues that the suggestions of malingering are speculative and not determinative conclusions. ECF No. 16 at 9-10. Defendant responds that the ALJ properly evaluated the evidence, and Plaintiff essentially argues that the ALJ should have come to a different conclusion. ECF No. 18.

The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not consistent with the record. Tr. 49. The ALJ notes Plaintiff's use of a cane or wheelchair but that there is no stated medical necessity in the record for the use of these devices. Tr. 49. Additionally, the ALJ found affirmative evidence of malingering that reduced the persuasiveness of Plaintiff's claims concerning his limitations. Tr. 49, 52.

On June 23, 2021, Plaintiff visited an audiologist, McCrum to receive testing for his hearing. Tr. 50. AUD McCrum found Plaintiff's hearing intact and could hold a conversation at a normal level. *Id.* While Plaintiff reported hearing loss

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

amounting to 25-8000 Hz for each ear on Traditional Puretone Testing, this was not consistent with "SRTs, Acoustic Reflexes or Otoacoustic emissions." Tr. 50-51. Based on that, AUD McCrum opined that the discrepancies suggested malingering. Tr. 51.

It was noted that on June 23, 2021, "Malingerer", "Person feigning illness" and "Malingering" were listed on a "problem list" by the Plaintiff's treating provider, Columbia Valley Health. Tr. 51. The ALJ notes Plaintiff's malingering diagnosis listed under "active problem list" during a March 2022 visit and July 2022 visit. *Id.*

During J. Despain, MD's visit with Plaintiff, Dr. Despain observed Plaintiff's "slow, antalgic gait" and Plaintiff complained of chronic back and total body pain. Tr. 51. Moreover, Dr. Despain stated that Plaintiff was suspected of being malingering from a recent visit with neurology. Tr. 51, 757.

Plaintiff's argument that the opinions are not determinative and are speculative is not supported by authority or the record. ECF No. 16 at 9-10. The standard states that the ALJ must establish affirmative evidence of malingering, not diagnostic. This means that suggestions of malingering can be enough. *See ex. Bahram H. v. Comm'r of Soc. Sec.*, 2018 WL 6809487, at *3 (W.D. Wash. Dec. 27, 2018) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008)). The ALJ provided different medical opinions suggesting malingering

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

due to discrepancies in the testing and alleged symptoms.  Tr. 49-51.  Additionally, malingering was listed as an active problem by one of his providers.  Tr. 51.  This in conjunction with evidence of discrepancies is not a mere isolated concern of secondary gain but affirmative evidence of malingering.  *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("Moreover, Dr. Riley merely suggested that *perhaps* there was an issue of *secondary gain*—he did not affirmatively find that Claimant was exaggerating or malingering.").  Therefore, the ALJ did not err when finding that there was affirmative evidence of malingering.

Plaintiff refers to different medical opinions that do not provide any suggestions for malingering and argues that not one of the mental health experts found malingering.  ECF No. 16 at 9.  However, not every medical opinion needs to suggest malingering for there to be a proper finding of malingering with affirmative evidence.  Therefore, this argument fails.

**C. Somatic Syndrome**

Third, Plaintiff states the ALJ erred by not considering somatic syndrome as a possible explanation and primary diagnosis.  ECF No. 16 at 10-11.  Plaintiff states this conclusion by Dr. Montgomery is supported with evidence from Drs. Dodd and Friedman's opinions.  ECF No. 16 at 11.

Dr. Montgomery's report generally shows unremarkable presentation but refers to Plaintiff's complaints of pain and other symptoms.  Tr. 484-86.  Dr.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

Montgomery opined that Plaintiff could return to work.  Tr. 487.  Under diagnosis, the report states that somatic symptom disorder is strongly suggested and that it is believed this is the primary psychiatric diagnosis.  Tr. 486.  In his report, Dr. Dodd reported "major depression with anxiety and somatization" and Dr. Friedman noted "overwhelming somatic symptoms" but did not make a specific diagnosis because additional treatment was necessary.  Tr. 483-84.

The ALJ found Dr. Rudd and Dr. Montgomery's opinions persuasive.  Tr. 53. These evaluations were conducted in connection with Plaintiff's L&I workers' compensation claim that occurred on December 12, 2013, while working as a box stacker.  Tr. 53.  Dr. Montgomery opined that there was no evidence presented to reopen Plaintiff's workers' compensation claim.  Tr. 53.  The opinions were based on evidence from Dr. Patwardhan, Ma-C Blevins, PA-C Lake, RN McLeod, Dr. Campbell and Dr. Despain.  Tr. 53.

Defendant states that Drs. Rudd and Montgomery did not provide a functional analysis regarding Plaintiff's abilities but rather that the exam was unremarkable and reopening the compensation case was not necessary.  ECF No. 18 at 5.  While Plaintiff identifies support for the somatic syndrome diagnosis, Plaintiff does not identify support alleging severe impairment from this order.  ECF No. 16 at 11-12.

A failure to refer to a diagnosis in a specific opinion does not alone constitute harmful error.  The ALJ recognized that there were no functional limitations

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

suggested in these opinions.  ECF No. 18 at 5; Tr. 53.  A diagnosis does not amount to a limitation or impairment as defined under the SSA.  *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985); *Callahan v. Kijakazi*, 657 F. Supp. 3d 1368, 1382 (E.D. Cal. 2023) ("but mere diagnosis alone is not sufficient to establish a medically determinable impairment, let alone functional limitations.").  A diagnosis is not enough to show that the ALJ erred and that the outcome determination would be different.

**D. Dr. Metoyer & Mental Impairments**

Fourth, Plaintiff contends the ALJ erred by not addressing the moderate limitations in Paragraph B correctly.  ECF No. 16 at 12.  Plaintiff references Dr. Metoyer's opinion regarding his mental impairments and consistency with Plaintiff's claims.  ECF No. 16 at 12.

Plaintiff met with Dr. Metoyer on December 12, 2021.  Tr. 54.  Dr. Metoyer opined that his remote memory, recent memory and immediate memory were impaired.  Tr. 1415.  Also, Plaintiff's concentration and persistence were impaired and he had difficulties with home tasks.  Tr. 1415.  Dr. Metoyer continues that Plaintiff's ability to interact with others and the public is "likely moderately to markedly impaired due to anxiety, PTSD, mood symptoms and tendency to avoid others."  Tr. 1415.   Plaintiff's ability to adhere to regular attendance requirements in the workplace was moderately impaired.  Tr. 1415.  Plaintiff's ability to

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

understand, remember, complete complex instructions, complete a work week or day without interruption and deal with stress were all moderately impaired.  Tr. 1415-1515.

Dr. Metoyer's report provides many of Plaintiff's claims and complaints, but Dr. Metoyer also conducted mental tasks.  Tr. 1415.  Plaintiff could not complete many of the tasks such as identifying three objects, a current event, or states that border Washington.  Tr. 1415.  However, Dr. Metoyer noted that Plaintiff was cooperative and engaged during the exam.  Tr. 1413.

The ALJ found that Dr. Metoyer's opinion was unpersuasive because it was inconsistent with Plaintiff's other treatment records demonstrating a diagnosis of malingering and cooperation with medical providers.  Tr. 55.  The ALJ noted that Dr. Metoyer's opinions were not supported by his own examination and review.  Tr. 55.  Dr. Metoyer opined that Plaintiff had the ability to reason, understand and adapt to some adaptation skills but also noted many impairments and limitations.  Tr. 55.  The ALJ pointed out that Plaintiff told ARNP Benton the day before that he could walk about half a mile before needing to stop but told Dr. Metoyer he struggled to be on his feet for more than five minutes.  Tr. 54.

Plaintiff argues that Dr. Metoyer's opinion is consistent with Plaintiff's allegations.  ECF No. 16 at 12.  However, Defendant responds that the ALJ found contradictory objective evidence that Plaintiff's allegations were not consistent

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

with the medical evidence.  ECF No. 18 at 3.  In other words, the ALJ provided evidence of malingering, normal gait, unremarkable exams, etc.  ECF No. 18 at 3. Even if one medical opinion is consistent with Plaintiff's claims does not mean that the ALJ's interpretation and determination is wrong or insufficiently supported. The ALJ provided sufficient evidence to discount Plaintiff's allegations.  Simply recognizing evidence against the ALJ's determination does not mean that the ALJ's determination was in error.

**E. ARNP Benton & Physical Impairments**

Fifth, Plaintiff argues that Plaintiff's allegations of chronic pain limit his physical functioning and that a light RFC is not sufficient.  ECF No. 16 at 13. Plaintiff states he has additional or more severe functional limitations that preclude work.  ECF No. 16 at 13.  Plaintiff refers to Lisa Benton ARNP opinion stating her opinion failed to sufficiently assess these limitations or consider other diagnoses. ECF No. 16 at 13.

ARNP Benton diagnosed Plaintiff with chronic back pain and stomach issues. Tr. 497.  This provider did not find any specific functional limitations and exam was generally unremarkable.  Tr. 497-98.  ARNP Benton noted that Plaintiff used a cane but was unsure whether this was a medical necessity.  Tr. 498, 53.  The ALJ found ARNP Benton's opinion persuasive and noted this opinion was consistent with the record and treatment notes of Dr. Despain and Dr. Rudd.  Tr. 54

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20

Plaintiff appears to argue that ARNP Benton did not accurately assess him. ECF No. 16 at 13. However, it is not the Court's job to determine whether a medical provider appropriately conducted his or her examination. Furthermore, it is not the ALJ's role to make this determination, but rather to evaluate credibility. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (stating the ALJ's job is to evaluate credibility and resolve ambiguities and inconsistencies); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (stating that the ALJ must not make his or her own assessments or refer to medical textbooks regarding a Plaintiff's condition).

**II.    The Commissioner Met his Burden at Step Five of the Evaluation.**

Plaintiff argues that the ALJ incorrectly relied on an opinion of a vocational expert ("VE") regarding a hypothetical. ECF No. 16 at 13-14. Plaintiff asserts that because the ALJ incorrectly evaluated his functional abilities the hypothetical is based on incorrect assumptions. ECF No. 16 at 14. However, as Defendant argues, Plaintiff did not identify any errors that demonstrate the RFC determination was incorrectly analyzed. Thus, the ALJ did not base the hypothetical on any incorrect assumptions and Plaintiff does not identify an error.

Plaintiff did not identify any harmful errors. Plaintiff failed to even argue that any of the alleged errors amount to anything more than harmless errors. Additionally, Plaintiff rarely cites authorities beyond the record for his arguments.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

ECF No. 16. Accordingly, the Court finds that the ALJ did not commit harmful error, and remand is not warranted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED.**

2. Defendant's Response Brief (ECF No. 18) is **GRANTED.** The Commissioner's final decision is **AFFIRMED.**

The District Court Executive is directed to enter this Order, enter judgment for Defendant, furnish copies to counsel, and **CLOSE** this file.

DATED April 9, 2026.



THOMAS O. RICE
United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22